UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANDI CZERNIEWSKI, individually and as Trustee on behalf of the Estate of Bruce Schepens,<br><br>Plaintiff,<br><br>v.<br><br>TD AMERITRADE, INC, *et al.*,<br><br>Defendants. | Case No. 2:18-CV-02078-KJD-VCF<br><br>ORDER |

Presently before the Court is Defendant Kristine Keppel's Motion for Partial Summary Judgment (Choice of Law) (#32). Plaintiff filed a response in opposition (#35) to which Defendant replied (#44). Also before the Court is Plaintiff's Motion for Summary Judgment (#36). Defendant Keppel filed a response in opposition (#46) to which Plaintiff replied (#47).

I. Background

On August 14, 2006, Schepens created the Trust. [Doc. 1-1, Exhibit "A" to Complaint, pages 19-44]. The Trust is governed by Nevada law and, at the time of its creation, Schepens was a Nevada resident. Id. Schepens created the Trust in contemplation of his upcoming marriage to Keppel. The purpose of the Trust was to segregate and administer Schepens' separate property for his sole benefit during his lifetime. The Trust provides that, as the sole beneficiary during his lifetime, Schepens was entitled to all principal and income of the Trust to the exclusion of Keppel and all others. The Trust provides that, upon Schepens' passing, the Trust would be administered by Keppel as successor trustee, or alternatively by Brandi Czerniewski, Schepens' daughter, if Keppel was deceased or unable or unwilling to serve. [Doc. 1-1, Exhibit "A" to Complaint, at pp. 20-21, Section 7.1]. The Trust also provides that, upon Schepens' death, the Trust would be distributed in two shares consisting of a seventy-five percent (75%) share to Keppel, and a twenty-five percent (25%) share to Brandi. [Doc. 1-1, Exhibit "A" to Complaint,

at pp. 19-20, Sections 5.1(a) and (b).] The Trust specifically designates Nevada law to govern the Trust and its administration. Specifically, the Trust contains the following provision:

> 14.1 Controlling Law. This Trust Agreement is executed under the laws of the State of Nevada and shall in all respects be administered by the laws of the State of Nevada; provided, however, the Trustee shall have the discretion, exercisable at any later time and from time to time, to administer any Trust created hereunder pursuant to the laws of any jurisdiction in which the Trustee may be domiciled, by executing a written instrument acknowledged before a notary public to that effect, and delivered to the then income beneficiaries. If the Trustee exercises the discretion, as above provided, this Trust Agreement shall be administered from that time forth by the laws of the other state or jurisdiction.

[Doc. 1-1, Exhibit "A" to Complaint, at p. 41, Section 14.1].

In order to keep his real property separate from Keppel, on August 15, 2006 Schepens executed a Grant, Bargain, Sale Deed and transferred real property he owned at 6139 Sundown Crest Street, Las Vegas, Nevada ("the Nevada Property"), to the Trust. Similarly, on August 17, 2006 Schepens executed a TD Ameritrade account application by which his TD Ameritrade account ending 0699 would be converted into a Trust account owned by the Trust. The TD Ameritrade Account ending 0699 is hereafter referred to as the "Trust Account." The Trust Account's application contains a provision binding the Trust and the account owner (i.e., Schepens as Trustee of the Trust) to the TD Ameritrade terms and conditions, which includes a provision that Nebraska law governs any future court action brought by Schepens against TD Ameritrade.

On September 16, 2006, Schepens married Keppel in Clark County, Nevada, one month after Schepens created the Trust and the Trust Account. On July 17, 2012, Schepens opened a traditional Individual Retirement Account with TD Ameritrade, account ending 7410 ("IRA"). As with the Trust Account application, the IRA application contained a provision that Nebraska law would govern its terms. The IRA application further provided that Schepens' heirs, executors and administrators are also bound by the agreement. As shown on the TD Ameritrade IRA account application, Schepens designated Keppel, in her capacity as Schepens' "wife," as the beneficiary of the IRA. The uncontroverted evidence demonstrates that, at all relevant times herein, the IRA was owned by Schepens, individually, and not as an asset of the Trust. The IRA

statements produced by TD Ameritrade are titled in the name of Bruce Schepens, individually, and not in the name of the "Separate Property Trust," or Schepens as Trustee of the Trust. In contrast, the Trust Account statements are titled in the name of Schepens as Trustee of the Trust.

Further, the TD Ameritrade Account application for the IRA demonstrates that Keppel was the beneficiary of the IRA, not the Trust. On December 27, 2012, Schepens purchased real property located at 11096 Palmerston Avenue, Punta Gorda, Florida 33955 ("the Florida Property") with funds from the Trust Account.

On January 20, 2015, Schepens and Keppel were divorced in Clark County, Nevada as evidenced by the Stipulated Divorce Decree filed that day ("Divorce Decree"). As specifically acknowledged in the Divorce Decree, there were no community assets or debts to be divided between Schepens and Keppel because "…the parties never commingled their money during the marriage." The Divorce Decree additionally provided that Schepens would allow Keppel to reside in the Nevada Property until July 15, 2015.

Following the entry of the Divorce Decree, Schepens relocated to Florida, residing in the Florida Property, while Keppel continued to reside in Nevada. On June 30, 2015, Schepens, as Trustee of the Trust, sold the Nevada Property to Keppel. On April 13, 2016, Schepens created the Bruce Schepens Revocable Trust ("Schepens Revocable Trust" or "the Florida Trust") in Florida.

On March 3, 2018, Schepens died in Florida. Following Schepens' death, Keppel changed ownership of the Trust Account (TD Ameritrade account ending in 0699) to herself under the guise that she was acting as "Trustee" of the Trust. Keppel changed the account title to: "Kristine Keppel TR FBO Bruce Schepens Separate Property Trust UA 08/14/2006." Between July 10, 2018 and July 25, 2018, Keppel withdrew $392,000 in cash from the Trust Account or approximately 85% of the account's value, notwithstanding her claim that her purported beneficial interest in the Trust is only 75%. TD Ameritrade subsequently froze the Trust Account and IRA.

In May of 2018, Brandi initiated a state court action in the Circuit Court of the Twentieth Judicial District for Charlotte County, Florida, Case No. 18000432CA (the "Florida

Proceeding"), seeking a determination of ownership of the Trust Account and the IRA. The Florida Proceeding was initiated there under the belief that the TD Ameritrade Trust Account had previously been transferred by Bruce as Trustee of the Trust to be owned by the Schepens Revocable Trust. In fact, the TD Ameritrade Trust Account was never transferred to the Schepens Revocable Trust, but rather continues to be owned by the Trust.

In response to being served with the Complaint in the Florida Proceeding, Keppel filed a Motion to Dismiss, in which she asserted that the Trust specified the governing law as the State of Nevada, that exclusive jurisdiction to determine any issues pertaining to the Trust rests in Nevada, the Trust has assets located in Nevada, Nevada is where the presumptive Successor Trustee resides (referring to Keppel), and that the Nevada courts as opposed to Florida, have "jurisdiction to adjudicate the legal consequences of Nevada law with respect to a Nevada resident's right to a Nevada asset[.]"

In consideration of Keppel's assertions in her Motion to Dismiss in the Florida Proceeding that jurisdiction in Nevada was appropriate, that Nevada law applied, and having learned that the Trust Account was, in fact, owned at all relevant times by the Trust and not the Florida Trust, Brandi voluntarily dismissed the Florida Proceeding and filed the instant lawsuit in the Eighth Judicial District Court, for Clark County, Nevada.16 27. On October 29, 2018, TD Ameritrade removed this lawsuit to the Federal District Court of Nevada. On October 2, 2019, Letters of Special Administration of the Estate of Bruce Schepens were granted to Brandi by the Probate Court for the Eighth Judicial District Court, for Clark County, Nevada.

The parties[1] have now filed competing motions for summary judgment regarding which jurisdictions' law applies to the trusts at issue in this action and the application of that law to the facts.

II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith

---

[1] The claims between Plaintiff and TD Ameritrade are stayed pending resolution of the claims between Plaintiff and Keppel. After resolution of the claims between Brandi and Keppel, those claims will be arbitrated.

1  Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings,
2  depositions, affidavits, and other materials in the record show that there is no genuine issue of
3  material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R.
4  Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
5         A fact is material if it might affect the outcome of the suit under the governing law.
6  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving
7  testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha
8  Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also
9  insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs.,
10 69 F.3d 337, 345 (9th Cir. 1995).
11        The moving party bears the initial burden of showing the absence of a genuine issue of
12 material fact. See Celotex, 477 U.S. at 323. Once that burden is met, the nonmoving party then
13 has the burden of setting forth specific facts demonstrating that a genuine issue exists. See
14 Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e). If the nonmoving party fails to make a
15 sufficient showing of an essential element for which it bears the burden of proof, the moving
16 party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

17 III. Analysis

18         A. Effect of the divorce upon the Trust, Trust Account and the IRA

19        It is undisputed that in August 2006, in preparation for his September wedding to Keppel,
20 Bruce Schepens created a separate property trust, the Trust. Keppel and Schepens' daughter,
21 Plaintiff Brandi Czerniewki, were named successor trustees and beneficiaries. The Trust
22 recognized that Schepens was a resident of Clark County, Nevada. The 2006 Separate Property
23 Trust contained a provision recognizing that the Trust was executed under the laws of Nevada
24 and was to be administered by the laws of the state of Nevada. The Controlling Law Provision,
25 Article 14.1, endowed the Trustee with the discretion to administer the trust pursuant to the laws
26 of any jurisdiction in which the Trustee was domiciled by executing a written, notarized
27 acknowledgement that was delivered to income beneficiaries. There is no dispute that Schepens
28 never executed such an acknowledgment. Further, Schepens resided in Nevada when he and

Keppel divorced in Nevada state court. Keppel now argues that Florida law should apply to the trust because Schepens resided in Florida when he died and his probate estate is in Florida. The Court disagrees.

<u>1. Keppel's Interest in the Trust, Trust Account and IRA were Revoked by Operation of Nevada Law</u>

Courts apply the law of the state identified in a trust instrument's choice of law provision. <u>See</u> NRS § 164.045 (expressly providing that Nevada law governs trusts where the trust instrument so provides, including those trusts where the trustor is not domiciled in the State of Nevada); <u>see</u> also <u>Key Bank of Alaska v. Donnels</u>, 787 P.2d 382, 384 (Nev. 1990) (citing <u>Sievers v. Diversified Mtg. Investors</u>, 603 P.2d 270, 273 (Nev. 1979) (expressing that "[i]t is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is controlling if the parties acted in good faith and not to evade the law of the real situs of the contract")); <u>In re Guardianship of Mixer</u>, 373 P.3d 926 (2011) (unpublished) (citing <u>Sievers</u>, 603 P.2d at 273 (affirming that, under choice of law principles, the governing-law provision of a trust is valid and controlling)). Moreover, Nevada law specifically applies to the determination of property rights upon the dissolution of a marriage formed in Nevada, particularly where one or both of the parties are Nevada residents. <u>See</u> NRS § 123.010.

There is no dispute that the parties were divorced in 2016 in Nevada and subject to the jurisdiction of Nevada courts. NRS § 163.565 operates to revoke every beneficial interest a person has in her former spouse's property upon divorce, including the designation to serve as the trustee of any trust established by such spouse prior to the entry of the divorce decree. Here, the designation to serve a successor trustee and the beneficial interest in the property of the trust was granted before the divorce. The only way to preserve an interest granted before the divorce was to do so in an agreement approved by the court in the divorce proceedings, or by separate order of the court during the divorce proceedings. <u>Id.</u> There is no evidence that the court did so.

Further, NRS § 111.781 provides that divorce revokes any revocable "disposition or appointment of property made by the divorced person to his or her former spouse" or her nomination to serve as trustee of the other's trust in a governing instrument. NRS §

111.781(1)(a)(1). Moreover, NRS 111.781 expressly applies "to nonprobate transfers which become effective because of the death of a person on or after October 1, 2011" and includes transfers of "property or any other benefit to a beneficiary designated in a governing instrument." See NRS 111.781(10) and (11)(a). NRS § 164.960 further confirms that "[t]he provisions of NRS 111.781 concerning the revocation of certain transfers based upon divorce or annulment apply to transfers of property made pursuant to a trust." See Matter of Colman Family Revocable Living Tr., Dated June 23, 2011, 460 P.3d 452, 454 (Nev. 2020) (holding that pursuant to NRS 11.781, "any revocable dispositions of property to a former spouse, including those made pursuant to a trust, are **automatically revoked upon divorce**") (emphasis added); see also, Genworth Life & Annuity Ins. Co. v. Ruckman, 2019 WL 6255480, at *6 (D. Nev. Nov. 22, 2019) (holding that "[p]ursuant to NRS 111.781, Ruckman is treated as if she had disclaimed her interest in the life insurance proceeds at the time of her divorce in 2010. Her beneficiary status had thus ceased to exist at the time of decedent's death in 2015").

The plain effect of Nevada law is that Keppel's beneficial interest in the Trust and designation to serve as successor Trustee were "revoked" or "disclaimed" automatically upon the divorce. NRS § 111.781 also applies to the IRA account as well, the effect of which voids Keppel's beneficiary designation. Even if Florida law later applied to administration of the Trust after Schepens relocated his domicile there after the divorce, Nevada statute had already automatically revoked any disposition of property or designation of Keppel as a successor Trustee. If Schepens had intended for her to receive property or act as a successor Trustee he would have either had a court order when divorced, or a post-divorce amendment to the Trust. Therefore, the Court denies Keppel's motion for summary judgment on this question and grants Plaintiff's.

2. The Florida Statute Does not Apply

Even if Florida law governed the facts of this action regarding the Trust—which it does not—Keppel would not be entitled to summary judgment because the statute upon which she relies does not support her claim. Keppel relies upon Fla. Stat. § 732.507(2) in support of her claim that her interests in the Trust and IRA were not revoked upon the divorce because she

asserts that revocation is not applicable where her beneficial interests in the accounts were established prior to the marriage. <u>See</u> Motion for Summary Judgment, Doc. No. 32, p. 15-16. Again, the Court disagrees.

First, by its express terms the statute only applies to wills, not trusts or individual retirement accounts. Fla. Stat. § 732.507(2) ("Any provision of a **will** executed by a married person that affects the spouse of that person shall become void upon the divorce of that person or upon the dissolution or annulment of the marriage. After the dissolution, divorce, or annulment, the will shall be administered and construed as if the former spouse had died at the time of the dissolution, divorce, or annulment of the marriage, unless the will or the dissolution or divorce judgment expressly provides otherwise." ) (emphasis added). Further, even if Florida law applies to the trust or assets of the trust, Florida statutes contain a similar provision to Nevada, any provision of the trust that affects the settlor's spouse becomes void upon the divorce and the "trust shall be administered and construed as if settlor's spouse had died on the date of the. . . entry of judgment for . . . divorce." Fla. Stat. § 736.1105; <u>see also</u> Fla. Stat. § 732.703(3)(c),(d) (applying the terminating provision, § 732.703(2) to IRA accounts).

### 3. TD Ameritrade Accounts

The Court recognizes that the TD Ameritrade IRA and Trust Accounts contain choice of law provisions requiring Nebraska law to apply to disputes between Schepens (or the Trusts) and TD Ameritrade. Even if these provisions affected the dispute between Plaintiff and Keppel, the result would be the same, because Nebraska statutes contain provisions nearly identical to Nevada and Florida. <u>See</u> Neb. Rev. Stat.§30-2333 (a divorce revokes any revocable disposition from a divorced individual to their former spouse, or any disposition, nomination or appointment as if they had died or disclaimed the provisions before the divorce).

### 4. Constitutionality of NRS § 111.781

Keppel also argues that even if NRS§ 111.781 applies, it is unconstitutionally overbroad, citing <u>Silvar v. Eighth Judicial Dist. Court</u> *ex rel. Cty. of Clark*, 129 P.3d 682, 684 (Nev. 2006), and infringes her protected rights to receive a beneficial disposition from her former spouse. The Nevada Supreme Court found the ordinance, prohibiting loitering for the purpose of prostitution,

in Silvar unconstitutional because "[a] person of ordinary intelligence could who carefully reads [the ordinance] could not be sure what specific acts "manifest" illegal activity," and secondly because the ordinance did not provide adequate law enforcement guidelines. Id. at 685-86. Unlike the ordinance in Silvar, the Court finds that NRS § 111.781 is neither vague, nor overbroad in its intended application --all instances of divorce occurring in Nevada where one former spouse has established beneficial interests or fiduciary designations of the other in their estate planning.

Further, Keppel cannot establish that she has "protected rights" in the separate property of her former spouse. See Linthicum v. Rudi, 148 P.3d 746, 749 (Nev. 2006) (A beneficiary's interests in a revocable living trust are "subject to complete divestment while the settlor [is] alive."). Here the undisputed evidence shows that Schepens fully intended to keep his assets acquired before the marriage separate from the marital estate. Later, where he did intend to transfer separate property to his former spouse, he did so by legally transferring them to her, for example selling the Nevada Property to Keppel, which required its removal from the Trust. Thus, Schepens demonstrated that he knew that if he intended to revive Keppel's interest, he would have to execute a subsequent document which would re-establish her interests. Keppel has failed to meet her burden in demonstrating that NRS § 111.781 is unconstitutional. See Silvar, 129 P.3d at 684 (challenger has the burden to make a clear showing of invalidity)." Therefore, the Court denies her motion for summary judgment on this ground.

5. Choice of Law Analysis Supports the Application of Nevada Law

Federal courts apply the choice-of-law rules of the state courts in which the district sits. Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941). Nevada's choice-of-law principles permit parties "within broad limits to choose the law that will determine the validity and effect of their contract." Sievers v. Diversified Mtg. Investors, 603 P.2d 270, 273 (Nev. 1979). If the agreement has a substantial relation with the transaction and is not contrary to the public policy of the forum, then that choice is valid. Id.

Generally speaking, the Nevada Supreme Court has found that the Restatement (Second) of Conflicts of Law is the relevant authority for choice-of-law analysis in tort and contracts

cases. See Progressive Gulf Ins. Co. v. Faehnrich, 327 P.3d 1061, 1063 (Nev. 2014); Dictor v. Creative Mgmt. Servs., LLC, 223 P.3d 332, 335 (Nev. 2010). Choice of law principles generally respect a designation in a trust which provides that certain law be applied to interpret it. In re Zukerkorn, 484 B.R. 182, 190 (B.A.P. 9th Cir. 2012) (citing Restatement (Second) of Conflict of Laws § 268(1)) (a trust is construed in accordance with the rules of construction of the state designated for this purpose in the instrument)). Zukerhorn's analysis of the effect of § 270 is particularly instructive, specifically:

> Effect will be given to a provision in the trust instrument that the validity of the trust shall be governed by the local law of a particular state, provided that this state has a substantial relation to the trust and that the application of its local law does not violate a strong public policy of the state with which as to the matter at issue the trust has its most significant relationship.
>
> A state has a substantial relation to a trust when it is the state, if any, which the settlor designated as that in which the trust is to be administered, or that of the place of business or domicile of the trustee at the time of the creation of the trust, or that of the location of the trust assets at that time, or that of the domicile of the settlor, at that time, or that of the domicile of the beneficiaries. There may be other contacts or groupings of contacts which will likewise suffice.

Id. at 191(quoting Restatement (Second) of Conflict of Laws § 270, comment (b)). Thus, applying Restatement (Second) of Conflict of Laws, a Nevada court would apply the law of the State of Nevada as to the current dispute as to ownership of the Trust Account between Brandi and Keppel. Nevada is the State that bears the "substantial relationship" to the dispute. See Restatement (Second) of Conflict of Laws § 270 (1971), comment (b).

This case mirrors In Thrivent Fin. for Lutherans v. Bloomquist, 2018 WL 3312979, at *3 (D. Nev. July 3, 2018), a case decided in this Court. Under a factual scenario very similar to this one, the district court applied a choice of law analysis between California and Nevada law in determining the former spouse's interests under a life insurance policy. The court determined that California law applied such that the former spouse's interests as a designated beneficiary under a life insurance policy were not revoked by application of Nevada law, where the former spouse and decedent were divorced in California, the divorce decree was entered pursuant to California law, and the decedent did not move to Nevada until after the divorce. The analysis

applies here with the mirrored result that Nevada law should apply. The marriage occurred in Nevada, the assets were owned by Schepens in Nevada, the accounts and beneficial interests were created in Nevada, and Schepens and Keppel were divorced in Nevada. Schepens did not relocate to Florida until after the divorce was finalized. Therefore, Nevada law applies: Keppel had no interest in the Trust, the Trust Account or the IRA Account because any interest she had was automatically revoked upon divorce.

### B. Conversion

Remaining is Plaintiff's claim for conversion for the funds improperly transferred from the Trust Account and the IRA Account to Keppel. Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd., 193 P.3d 536, 542 (Nev. 2008) (citing Evans v. Dean Witter Reynolds, Inc., 5 P.3d 1043 (Nev. 2000)). Additionally, the Nevada Supreme Court has held that "conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." Id. at 193 P.3d at 542-43.

Keppel argues that issues of material fact require resolution by a fact finder because conversion is question of fact for a jury. While that is generally true, Keppel is under a duty to cite specific issues of material fact that are in dispute or to file legal points and authorities in support of her position. However, the facts cited by Keppel are immaterial to the claims at issue in this action. Keppel admits that she withdrew $392,000.00 from the Trust Account ending in 0699 shortly after being served with Plaintiff's complaint in the original Florida action. She further admits that she spent $59,320.84 of those withdrawn funds.

Keppel is correct that generally a conversion claim will not lie to enforce contractual obligations. However, there is no contract between Plaintiff and Keppel at issue. Here, the contracts are between Schepens, or Brandi as the executor of Schepens Estate and TD Ameritrade. It is clear that Keppel has wrongly exerted control over the Separate Property Trust and the Trust Account. She has wrongly withheld the funds that she disbursed from those

accounts.[2] Finally, NRS § 111.781 which terminated Keppel's interest in the accounts [3] makes her personally liable for her transfer of the money.

Therefore, the Court grants Plaintiff summary judgment on her claim for conversion. Further, Defendant/Counterclaimant Keppel's counterclaim for intentional interference with contractual relations and prospective economic advantage is premised upon her belief that her beneficiary and substitute trustee designations were not terminated upon her divorce from Schepens. Accordingly, the Court, having found that her interests were revoked automatically upon her divorce, grants summary judgment on the counterclaim.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Kristine Keppel's Motion for Partial Summary Judgment (Choice of Law) (#32) is **DENIED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#36) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Counterdefendant and against Counterclaimant;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiff and against Defendant in the amount of $392,000.00; and declaring that:

1. Keppel's interests in the Trust Account, Trust, and IRA, are void by operation of Nevada law effective upon the divorce;

2. The designation in the Trust for Keppel to serve as Successor Trustee of the Trust was revoked by operation of Nevada law effective upon the divorce, and that Brandi is entitled to serve as Successor Trustee of the Trust;

3. Brandi in her capacity as Successor Trustee of the Trust is the owner and

---

[2] The cases Keppel cites, Ferreria v. P.C.H., Inc., 704 P.2d 1041, 1043 (1989) and Wantz v. Redfield, 326 P.2d 413, 414 (1958), asserting that her conduct is not wrongful are distinguishable, because the defendants in those cases did not withhold property in exclusion to or in defiance of the proper owner's rights.

[3] See, NRS 111.781(8), which provides, in relevant part, that "[a] former spouse, … who, not for value, received a payment, item of property or any other benefit to which that person is not entitled under this section is obligated to return the payment, item of property or benefit or is personally liable for the amount of the payment or the value of the item of property or benefit to the person who is entitled to it under this section."

entitled to the immediate possession of the Trust Account monies;

    4. Brandi in her capacity as Personal Representative and Special Administrator of the Estate, is the owner and entitled to the immediate possession of the IRA monies

    DATED this 29th day of March 2021.

                                                                                                The Honorable Kent J. Dawson
                                                                                                United States District Judge